Filed 10/17/22  In re Reagan W. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re REAGAN W., a Person Coming Under the Juvenile Court Law. | B317561 |
| | (Los Angeles County Super. Ct. No. 19CCJP07459B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SADE H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tara Newman, Judge.  Conditionally affirmed, remanded with directions.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal County Counsel, for Plaintiff and Respondent.

_____

On December 28, 2021 the juvenile court terminated Sade H.'s parental rights to her two-year-old daughter, Reagan W., and transferred the child's care, custody and control to the Los Angeles County Department of Children and Family Services for adoptive planning and placement. (Welf. & Inst. Code, § 366.26.) On appeal Sade contends that the Department violated Welfare and Institutions Code section 224.2, subdivision (e), and California Rules of Court, rule 5.481(a)(4),[1] adopted to implement the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.), by failing to make an adequate "further inquiry" after she advised the Department and the court she and Reagan may have Muscogee (Creek) Nation tribal ancestry and that the juvenile court erred in not ensuring the Department complied with its ICWA-related obligations and in ruling ICWA did not apply. We agree and remand the matter for full compliance by the Department and the juvenile court with the inquiry and, if appropriate, notice provisions of ICWA and California law.

_____

[1] Statutory references are to the Welfare and Institutions Code unless otherwise stated. References to rules are to the California Rules of Court.

2

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Dependency Petition and Termination of Parental Rights*

On June 24, 2020 the juvenile court sustained a dependency petition pursuant to section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling), finding true the allegations that Reagan had been born with a positive toxicology screen for methamphetamine; Sade had a history of substance abuse and was a current abuser of methamphetamine, amphetamine and opiates, which rendered her incapable of providing regular care of infant Reagan and her then-two-year-old sibling, Rylee H.; and Reagan and Rylee's siblings, Sarai H. and Mackenzie H., were prior dependents of the juvenile court in Riverside County due to Sade's substance abuse and had received permanent placement services. The court declared both children dependents of the court; removed them from Sade's custody; and ordered family reunification services for Sade, including a substance abuse program, individual counseling and monitored visitation.[2] The whereabouts of Reagan's alleged father, Daniel W., were unknown, and the court declined to order reunification services or visitation for him.

At a combined six- and 12-month review hearing in January 2021 (§ 366.21, subds. (e), (f)), the court found Sade had failed to participate or make substantial progress in her court-ordered programs. (She consistently failed to appear for drug testing and had not enrolled in a 12-step program.) The court terminated reunification services and set a selection and

---

[2] Sade's parental rights to Rylee (and those of Rylee's presumed father, David H.) were terminated on May 24, 2021. Neither parent appealed that order.

3

implementation hearing pursuant to section 366.26 for May 24, 2021. That hearing was continued several times after Daniel was located. Although Daniel requested a DNA test to determine whether he was Reagan's biological father, he never completed testing and never achieved a status other than alleged father.[3]

On December 22, 2021 Sade filed a petition pursuant to section 388 to modify the order terminating her reunification services and setting the section 366.26 hearing. Sade alleged as changed circumstances that she had enrolled in a drug program and individual counseling and had been consistently visiting with Reagan. Sade asked that Reagan be placed in her home under the supervision of the Department or, alternatively, she be provided six more months of reunification services.

At a hearing on December 28, 2021 the court denied the section 388 petition based on the papers submitted and found Reagan was adoptable and Sade had failed to establish the beneficial parental relationship exception to adoption. The court terminated the parental rights of Sade and Daniel, freed Reagan from their custody and control and transferred custody and control to the Department for adoptive planning and placement.

Sade filed a timely notice of appeal.

2. *The Department's ICWA Investigation and the Juvenile Court's ICWA Findings*

The Indian Child Inquiry Attachment (ICWA-010(A)) forms filed with the dependency petition on November 19, 2019 reported that Sade had said her great-grandmother Nancy C. had

---

[3] Given Daniel's status as an assumed father only, Sade does not argue on appeal the Department's investigation of Reagan's possible Indian ancestry through her paternal relatives was inadequate.

4

Muscogee (Creek) Nation of Oklahoma ancestry. The same information was included in the detention report filed by the Department, which also stated Sade had said neither she nor her child was registered with the tribe.

With her appearance at the detention hearing on November 20, 2019, Sade filed a Parental Notification of Indian Status (ICWA-020) form that also indicated Creek tribe ancestry. At the hearing the court, observing that the detention report indicated the great-grandmother[4] was registered with the Muscogee (Creek) Nation of Oklahoma, ordered the Department to follow up with further interviews, to send appropriate notices to the tribe and to provide the court with copies of any responses received. The court did not ask Sade if she had contact information for the great-grandmother or other relatives who might have knowledge of the family's ancestry or direct her to provide that information to the Department.

The ICWA section of the jurisdiction/disposition report filed January 2, 2020 did not indicate the Department had begun any investigation of Reagan's possible Creek ancestry. In its summary of an interview with Sade concerning her methamphetamine use, however, it was reported that Sade had a brother.

A last minute information report for the court filed by the Department on January 17, 2020 stated Sade had indicated Creek tribal ancestry may be associated with both her maternal

---

[4]     Nancy is sometimes referred to as Sade's great-grandmother and Reagan's great-great-grandmother; at other times as Sade's grandmother and, therefore, Reagan's great-grandmother. At the detention hearing the court simply identified her as "the great-grandmother."

and paternal lineage. The report attached copies of the Notice of Child Custody Proceeding for Indian Child (ICWA-030) forms sent to the Bureau of Indian Affairs (BIA), the Secretary of the Interior, the Muscogee (Creek) Nation and four additional Creek tribes, as well as return receipts from the BIA, the Muscogee (Creek) Nation and the Creek Thlopthlocco Tribal Town. The ICWA-030's gave Sade's mother's name, stated her mother was deceased (date and place unknown) and provided no other information about her mother; stated her father's name and included no other information; identified Nancy as Sade's grandmother, gave Nancy's date of birth, stated Nancy was deceased (date and place unknown) and provided no other information about Nancy or any information about Sade's other grandparents.

A subsequent last minute information report, dated June 24, 2020, attached a May 19, 2020 letter from the Muscogee (Creek) Nation stating that Reagan was not an Indian child as defined by ICWA.[5] (Similar letters had been received from the Thlopthlocco Creek Tribal Town and the Alabama-Quassarte Tribal Town.) At the jurisdiction/disposition hearing on June 24, 2020 the juvenile court found it did not have a reason to know Reagan was an Indian child.

Notwithstanding the June 2020 no-ICWA finding, at the review hearing on January 25, 2021 the court ordered the Department to conduct additional interviews of available maternal family members concerning possible American Indian

---

[5]    The tribe's letter included the following admonition in bold font: "This determination is based on the information exactly as provided by you. Any incorrect or omitted family documentation could invalidate this determination."

ancestry and to provide a detailed update to the court. The court reiterated its order to interview maternal relatives on March 11, 2021 and directed the Department to provide the court with "detailed information regarding Creek ancestry as to mother."[6]

An April 16, 2021 last minute information report explained that the social worker had reviewed information from 2006 and 2013 dependency proceedings involving Sade in Riverside County.[7] In 2006 Nancy (described as Sade's paternal grandmother) advised the investigating agency her father (name not indicated in the document reviewed) and her father's mother (name not disclosed) were part of the Creek Indian Tribe of Oklahoma and Nancy believed she was registered with the tribe. In 2013 Debra C., Sade's paternal aunt, told the investigating agency she (Debra) was a registered member of the Muscogee (Creek) Nation, but that Sade and Sade's children were not registered members of the tribe. The report also described two unsuccessful attempts made by the social worker on April 13 and 14, 2021 to contact Sade by telephone to follow up on the issue of possible Indian ancestry and the social worker's unsuccessful attempts on April 14, 2021 to reach Nancy and

---

[6] In a last minute information report dated March 11, 2021, the Department stated Sade, in contrast to her earlier assertions of Creek ancestry, had informed the social worker she had no Indian ancestry. According to the report, Sade was relying on the juvenile court's determination that ICWA did not apply to her in a case in which she had been a minor dependent. No details concerning the ICWA investigation conducted in that proceeding were included with the report.

[7] The social worker was unable to locate documents from a Los Angeles County dependency case involving Sade as a minor.

7

Debra by telephone, apparently using telephone numbers retrieved from the state's child welfare services/case management system (CWS/CMS).

The Department sent new ICWA-030 notices to the BIA, the Muscogee (Creek) Nation and other Creek tribes. These notices gave Sade's mother's date of birth and no longer reported she was dead, stating that was unknown, but included no other information. Sade's father's date of birth was now also included on the form, but no other information about him was provided. Whether Nancy was deceased was now said to be unknown (notwithstanding the attempts to reach her by telephone); her date of birth was again provided, but no other information; and the names and other information about Sade's other grandparents were all listed as unknown.

As reflected in the May 24, 2021 report for the section 366.26 selection and implementation hearing, over the next several weeks multiple response letters were received from the noticed tribes stating Reagan was not eligible for membership. In addition, the May 24, 2021 report described a telephone conversation between the social worker and the Muscogee (Creek) Nation's intake specialist responsible for reviewing eligibility of potential tribal members residing outside Oklahoma. The specialist said it had been determined that Reagan was not enrolled or eligible for enrollment in the tribe and that a letter reflecting that decision had been mailed. The letter explained that Reagan "cannot be traced within our tribal records based upon the information provided regarding blood-related immediate family members," but cautioned any "omitted family documentation could invalidate this determination."

The juvenile court again found it had no reason to know that Reagan was an Indian child as defined by ICWA at the section 366.26 hearing on May 24, 2021 and yet again on August 30, 2021 after Daniel had appeared and ICWA-030 notices had been sent to, and negative responses received from, tribes indicated on Daniel's Parental Notification of Indian Status form.

## DISCUSSION

1. *ICWA and the Duties of Inquiry and Notice*

ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq. (2022)) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551.) The statute authorizes states to provide "'a higher standard of protection'" to Indian children, their families and their tribes than the rights provided under ICWA. (*In re T.G.* (2020) 58 Cal.App.5th 275, 287-288; see 25 U.S.C. § 1921.) In addition to significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.*, at pp. 287-288), ICWA permits an Indian child's tribe to intervene in—or, where appropriate, exercise jurisdiction over—a child custody proceeding (see 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8).

To ensure Indian tribes may exercise their rights in dependency proceedings as guaranteed by ICWA and related state law, investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided to the appropriate tribes. (§ 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an

9

Indian child"]; see *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742.) The duty to inquire "begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G., supra,* 58 Cal.App.5th at p. 290; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 429; see § 224.2, subds. (a)-(c).)

In addition, section 224.2, subdivision (e), imposes a duty of further inquiry regarding the possible Indian status of the child "[i]f the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine there is reason to know that the child is an Indian child." Rule 5.481(a)(4) provides that further inquiry must be conducted if the social worker "knows or has reason to know or believe that an Indian child is or may be involved." Further inquiry includes, "but is not limited to," interviewing, as soon as practicable, extended family members to gather the biographical information required by section 224.3, subdivision (a)(5), to be included in ICWA notices, contacting the BIA and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2); see *In re Rylei S.* (2022) 81 Cal.App.5th 309, 316-317.)

If those inquiries result in reason to know the child is an Indian child,[8] notice to the relevant tribes is required. (25 U.S.C.

---

[8] "For purposes of ICWA, an 'Indian child' is an unmarried individual under age 18 who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member

§ 1912(a); Welf. & Inst. Code, § 224.3; see *In re J.S.* (2021)
62 Cal.App.5th 678, 686; *In re T.G., supra*, 58 Cal.App.5th at
p. 290.) The governing federal regulations require ICWA notices
to include, if known, the names, birthdates, birthplaces and tribal
enrollment information of all direct lineal ancestors of the child.
(25 C.F.R. § 23.111(d)(3) (2022).) State law mandates inclusion of
"[a]ll names known of the Indian child's biological parents,
grandparents, and great-grandparents, or Indian custodians,
including maiden, married, and former names or aliases, as well
as their current and former addresses, birth dates, places of birth
and death, tribal enrollment information of other direct lineal
ancestors of the child, and any other identifying information, if
known." (§ 224.3, subd. (a)(5)(C); see *In re A.M.* (2020)
47 Cal.App.5th 303, 317 ["'If the notice duty is triggered under
ICWA, the notice to a tribe must include a wide range of
information about relatives, including grandparents and great-
grandparents, to enable the tribe to properly identify the
children's Indian ancestry. [Citation.] Any violation of this
policy requires the appellate court to vacate the offending order
and remand the matter for further proceedings consistent with
ICWA requirements'"].)

 "The duty to develop information concerning whether a
child is an Indian child rests with the court and the Department,
not the parents or members of the parents' families." (*In re
Antonio R., supra*, 76 Cal.App.5th at p. 430; accord, *In re
Benjamin M., supra*, 70 Cal.App.5th at p. 742 ["the agency has a

---

of a federally recognized tribe." (*In re T.G., supra*, 58 Cal.App.5th
at p. 287, fn. 10; see 25 U.S.C. § 1903(4) [definition of "'Indian
child'"] & (8) [definition of "'Indian tribe'"]; see also Welf. & Inst.
Code, § 224.1, subd. (a) [adopting federal definitions].)

duty to gather information by conducting an initial inquiry, where the other party—here a parent . . . —has no similar obligation"]; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["[t]he court and the agency must act upon information received from any source, not just the parent [citations], and the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal"].)

      2.  *Remand Is Necessary for Compliance with the Department's and the Juvenile Court's ICWA-related Inquiry Obligations*

The Department unquestionably made some effort to investigate Sade's understanding that her family was affiliated with the Muscogee (Creek) Nation, as the juvenile court ordered it to do. And it appears Sade's level of cooperation with the Department was not high. But given the very clear assertion of possible Indian ancestry from Sade, as well as the reported statements from Nancy and Debra, all of which related to the Muscogee (Creek) Nation, more than was done here was necessary to constitute sufficient further inquiry as mandated by section 224.2, subdivision (e), and rule 5.481(a)(4).

In concluding the Department failed to meet its obligation of further inquiry, we need not find inadequate, as Sade urges us to do, the Department's limited attempts to contact Nancy and Debra, although it is troubling those efforts were first made nearly 18 months after initiation of the dependency proceedings using what may have been outdated telephone numbers gleaned from the state CWS/CMS database, rather than asking other family members for Nancy's and Debra's contact information. And we certainly agree with Sade it would have been reasonable for the social worker to make more of an effort to interview those

two individuals who had unequivocally identified themselves as Muscogee (Creek) Nation tribal members.[9]

But even accepting the Department's outreach to Nancy and Debra as minimally satisfactory, the record reflects no attempt to identify and interview other members of Sade's extended family, as required by both statute and rule 5.481. Sade's parents, perhaps most prominently, are nowhere mentioned in the Department's description of its ICWA-related investigation (other than including their names on the ICWA-030 forms). Nor are her siblings. As discussed, the jurisdiction/disposition report stated Sade had a brother, but were there other siblings? Was there an effort to contact any of them? Debra was Sade's paternal aunt. Even if the single effort to contact her was sufficient, did Sade's father have other siblings as well? We do not know because the Department did not inquire, at least as reflected in the record before us.

---

[9]    The Department asserts Sade provided no explanation why the social worker should make more than one attempt to contact a relative whose ICWA information it had and who had not returned an initial telephone call. One attempt may be sufficient for a relative who gave only a vague indication of some remote Indian ancestry—an issue we need not decide. But these relatives described themselves on separate occasions in separate proceedings as registered members of the Muscogee (Creek) Nation. Surely a social worker with a good faith interest in determining whether Reagan may be an Indian child would have believed it appropriate to make more of an effort than was done here. To suggest further inquiry of Nancy and Debra was "impossible and unnecessary," as the Department does, is not only inaccurate but also at odds with the Legislature's clear expression of the importance of thorough ICWA-related investigations by child protective agencies.

In addition, although the Department sent formal ICWA-030 notices to the Muscogee (Creek) Tribe, section 224.2, subdivision (e)(2)(C), requires the Department to have informal contact and to share information with a tribe in which a dependent child may be a member in order to develop the pertinent information—not simply to send a formal (and, here, largely incomplete) ICWA-030 notice. (See *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290 ["[t]his informal contact with the tribe must include 'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination'"]; see also *In re D.S.* (2020) 46 Cal.App.5th 1041, 1049 ["[t]he sharing of information with tribes at this inquiry stage is distinct from formal ICWA notice"].) To be sure, the Department's report for the May 24, 2021 selection and implementation hearing described a telephone conversation between its social worker and a Muscogee (Creek) Nation tribal eligibility representative, but nothing in the report suggests compliance with the Department's information-sharing obligation imposed by section 224.2, subdivision (e)(2)(C), rather than an inquiry as to the status of the response to the Department's ICWA-030 notice, which the Department needed for the hearing scheduled to take place in two days.[10]

The Department's argument as to why it was in substantial compliance with its duty of further inquiry is not persuasive. The Department is correct that it is "not required to 'cast about' for information or pursue unproductive investigative leads" (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1053); but in the paragraph

---

[10] In its respondent's brief the Department confirms the social worker contacted the tribe to obtain an expedited delivery of the response letter.

from *In re D.S.* the Department quotes for this adage, Justice Guerrero, writing for her then-colleagues in Division One of the Fourth Appellate District, described the duty of further inquiry by citing to, and quoting from, *In re K.R.*, *supra*, 20 Cal.App.5th at page 709: "[A] social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re D.S.*, at p. 1053.) Attempting to identify Reagan's maternal relatives (her maternal grandparents, aunts, uncles, great-uncles and great-aunts other than Debra) and to interview them concerning the family's relationship to the Muscogee (Creek) Nation about which Sade, Debra and Nancy all spoke is far from "casting about" for information.

The Department points out that Sade, when questioned several months after the detention hearing, contradicted her earlier statements and denied any Indian ancestry based on the juvenile court's finding in a prior dependency case that ICWA did not apply. But neither that finding nor any details of the ICWA investigation conducted in that prior case, if one was in fact undertaken, were provided to the court here. Sade's apparent reliance on that phantom finding to retract her assertion of Indian ancestry does not relieve the Department of its statutory responsibilities.

In response to Sade's argument that no effort was made to obtain contact information for her parents or her brother (or to learn if she had other siblings) or for Reagan's other family members—other aunts, uncles, great-aunts and great-uncles—in addition to Debra in order to interview them regarding Reagan's possible Indian status, the Department feebly responds that,

when the social worker asked Sade for her relatives' contact information for placement purposes, she provided no information. That Sade apparently did not want Reagan placed with one of her relatives did not mean she did not know how to contact them. And even if it did, the Department apparently did not access the CSW/CSM database or the Riverside County juvenile court records to determine contact information for any of Sade's relatives other than Nancy and Debra. Why not remains unexplained.

Finally, recycling an argument we have repeatedly rejected, the Department suggests it did all it needed to do for us to affirm the no-ICWA finding by faulting Sade and her appellate counsel for not describing what other relatives would have said if the Department had complied with its statutory obligations. This contention is no more persuasive now than when we first dismissed it in *In re Y.W.*, *supra*, 70 Cal.App.5th at page 556: "It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim." (Accord, *In re Rylei S.*, *supra*, 81 Cal.App.5th at pp. 320-321.)

Similarly unpersuasive is the Department's argument that any errors in failing to comply with its obligation to conduct a further inquiry regarding Reagan's possible Indian status were harmless. The Department emphasizes that it sent ICWA-030 notices to the Muscogee (Creek) Nation, as ordered by the juvenile court—the only tribal affiliation at issue. The tribe responded that Reagan was not a member, eligible for membership or an Indian child. As such, the Department

16

contends, any antecedent error in the extent of its investigation was necessarily harmless.

This analysis ignores that the express purpose of interviewing extended family members once there is reason to believe the child may be an Indian child, as set forth in section 224.2, subdivision (e)(2)(A), is to gather the extensive biographical information required by section 224.3, subdivision (a), as well as by federal law, for inclusion in the ICWA notice to tribes—information that was almost entirely missing from the ICWA-030 notices prepared by the Department. And it disregards the Muscogee (Creek) Nation's admonition that its determination as to Reagan's status was based upon the information provided and omitted information could alter that determination.

As we recently explained in *In re Rylei S.*, *supra*, 81 Cal.App.5th 309, a case like the one at bar involving a failure to make further inquiry of extended family members as required by section 224.2, subdivision (e), we have never held any misstep by the Department in the process of investigating a child's possible Indian status, however minor, requires reversal of a non-ICWA finding. Rather, the failure, as here, to fully comply with a mandatory duty is properly found to be harmless if the record affirmatively reflects that "the protections intended to be afforded through the exercise of that duty have been provided." (*In re Rylei*, at pp. 324-325.) No such showing appears in the record here.[11] A remand for further inquiry is required in this case.

---

[11] The Department appears to suggest, if we find error, that we adopt the "reason to believe" harmless error standard articulated by Division Two of this court in *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022,

## DISPOSITION

The December 28, 2021 order denying Sade's section 388 petition and terminating Sade's parental rights is conditionally affirmed. The matter is remanded to the juvenile court for full compliance with the inquiry and notice provisions of ICWA and related California law and for further proceedings not inconsistent with this opinion.


PERLUSS, P. J.


We concur:



SEGAL, J.



FEUER, J.

---

S275578. Whatever else we may think of the analysis in *In re Dezi C.*, that decision concerned the Department's failure to conduct the inquiry required by section 224.2, subdivision (b), and posited the failure to conduct a proper "initial inquiry" was harmless "unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA." (*In re Dezi*, at p. 779.) The Department's duty of further inquiry—at issue in this case—was triggered precisely because Sade's, Nancy's and Debra's statements about the family's affiliation with the Muscogee (Creek) Nation provided reason to believe Reagan may be an Indian child.

18